IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01661-MEH-MJW

EMILY R. BEXLEY,

    Plaintiff,

v.

DILLON COMPANIES, INC., d/b/a/ KING SOOPERS, INC., a Kansas Corporation,

    Defendant.

_____

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

In this employment discrimination suit, Defendant has filed a Motion for Summary Judgment (Docket #66), alleging, among other things, that Plaintiff's filing of a Chapter 7 bankruptcy petition and receiving a discharge -- without having listed her claim of discrimination as an asset of the bankruptcy estate -- deprives her of the ability to bring this action. Defendant also moves for summary judgment on the merits of Plaintiff's allegations of discrimination. The motion is fully briefed, and oral argument would not materially assist the Court in its resolution. For the reasons stated below, the Court **grants** the Motion for Summary Judgment.

**I.     Facts**

These are the facts that are undisputed (except as otherwise noted) for purposes of Defendant's Motion for Summary Judgment. Other relevant facts will be discussed later in this Order.

Plaintiff was employed by Defendant from 1974 to March 1996 when she resigned for other employment. In the latter part of this employment relationship, she requested to change her work

schedule and/or her job position, to accommodate her diabetic condition. She contends that Defendant did not reasonably accommodate her disability, and that she was constructively discharged, both of which Defendant denies. Plaintiff has had several jobs since she left Defendant's employ, and as of the briefing on this Motion, she was fully employed.

Plaintiff filed her charge of discrimination in May of 1996 with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission (EEOC). On August 18, 2003, the EEOC issued a Determination Letter concluding that there was reasonable cause to believe the discrimination had occurred, but not that Plaintiff had been constructively discharged. Plaintiff filed for Chapter 7 bankruptcy in the District of Colorado on February 23, 2004, No. 04-12987, in which she was represented by counsel. Her bankruptcy case was discharged on June 30, 2004. She did not disclose her discrimination claim as a potential asset of the bankruptcy estate, and there is no evidence in the record nor allegation by Plaintiff that the fact of this lawsuit came up either formally or informally during her bankruptcy case. Plaintiff filed this lawsuit on August 12, 2004.

**II.     Discussion**

    **A.     Legal Standard for Summary Judgment**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Finally, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

### B. Consequence of Failing to Disclose Potential Causes of Action in a Bankruptcy Petition

#### 1. Real Party in Interest

Defendant contends that Plaintiff's claims can be brought only by her Chapter 7 trustee,

arguing that Plaintiff was cognizant of the claims she now brings *before* she filed for bankruptcy. As such, her claims are part of her bankruptcy estate over which only her Chapter 7 trustee has any control. In her Response, Plaintiff does not dispute the general legal principle advanced by Defendant but, rather, argues that the Defendant drove her into bankruptcy by its initial discrimination and by failing to cooperate with the EEOC during the investigation of the charge of discrimination and should not profit from its conduct. Further, Plaintiff argues that her claim for front pay was not part of her bankruptcy case and should survive, citing 11 U.S.C. § 522(d)(11)(E) (providing an exemption for "payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor").

Pursuant to the United States Bankruptcy Code, the trustee gains control of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Tenth Circuit has noted that "causes of action belonging to the debtor fall within this definition." *Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir. 1996); *see Barger v. City of Cartersville*, 348 F.3d 1289, 1291 (11th Cir. 2003) ("[P]roperty of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy."). Under 11 U.S.C. § 554(d), "Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." Regarding causes of action known to the debtor at the time of filing for bankruptcy, "the trustee stands in the shoes of the debtor," having equal rights to the claim as previously possessed by the debtor. *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996).

In the present case, Plaintiff's claims based on the alleged discrimination were known to her before she filed for bankruptcy in 2004. In fact, she now claims that Defendant's conduct led her to

file for bankruptcy. Before her bankruptcy, therefore, she owned these assets, which constituted "choses in action."[1] She had an obligation to list any chose in action as an asset of the estate. After the filing of the bankruptcy, the trustee became the only person who could pursue the debtor's choses in action. *Sender v. Simon*, 84 F.3d at 1304-05. As of February 23, 2004, her claims against Defendant came under the control of her Chapter 7 trustee. Plaintiff no longer has control over the legal interests potentially at issue in this case and, therefore, cannot assert claims that are properly in her bankruptcy estate and controlled by her Chapter 7 trustee. Thus, under Fed. R. Civ. P. 17(a), Plaintiff is not the real party in interest in this lawsuit. *See Byrd v. Potter*, 306 B.R. 559 (N.D. Miss. 2002) (dismissing employment discrimination claims under similar facts). As such, judgment should be granted for the Defendant without reaching the merits of Plaintiff's claims of discrimination. *E.g.*, *Curtis v. United States*, 63 Fed. Cl. 172, 173 (Fed. Cl. 2004).

One further issue must be addressed prior to a final ruling on this issue.[2] In *Wieburg v. GTE Southwest Corp.*, 272 F.3d 302, 308 (5th Cir. 2001), the court held that in such a case as this, when

---

[1] A "chose in action" is defined as a "'right to bring an action to recover a debt, money, or thing.'" *In re Luna*, 406 F.3d 1192, 1199 n.4 (10th Cir. 2005) (citation omitted).

[2] There are several lines of analysis that the courts have used in a case such as this one, and this Court could find no Tenth Circuit law precisely on point. Some courts hold that the claim, disclosed or undisclosed, belongs to the trustee and results in a real-party-in-interest issue which alone mandates dismissal. *E.g.*, *Baxley v. Pediatric Servs. of Am.*, 147 Fed. Appx. 59 (11th Cir. Aug. 10, 2005); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004) (suggesting that judicial estoppel does not apply but, rather, the more appropriate defense is lack of protected interest). Other courts, as noted in this paragraph, require the district court to make certain findings prior to dismissing under Fed. R. Civ. P. 17(a) and the bankruptcy rules governing the listing of assets on the debtor's schedules. Still other courts have held that a debtor's failure to disclose a cause of action during a bankruptcy case judicially estopped the plaintiff from pursuing the claim. *E.g.*, *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2001); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3rd Cir. 2003). Because the case should be dismissed under any of these models, the Court need not adopt one particular theory.

the plaintiff who is bringing suit does not have a legal right to bring the action, prior to dismissing the complaint, the district court should address "the less drastic alternatives of either allowing an opportunity for ratification by the [t]rustee, or joinder of the [t]rustee." That court believed that a district court should address whether the plaintiff had a reasonable time after the defendant's objection during which to obtain joinder, ratification, or substitution of the trustee. *Id.* Further, the Fifth Circuit believed that the district court should consider the potential impact of dismissal on the plaintiff's creditors. *Id.* at 309.

Here, as in *Wieburg* [*see* the court's decision after remand, 71 Fed. Appx. 440, 2003 WL 21417074 (5th Cir. June 2, 2003)], the Plaintiff's case should be dismissed after analyzing those factors. First, considering the time that Plaintiff has had to involve the bankruptcy trustee after the Defendant objected, the Motion for Summary Judgment based on lack of a legally protected interest was filed in early January 2006. Further, it appears from the Court's file that Plaintiff's and Defendant's counsel were aware of the bankruptcy in August 2005 and discussed the issue then. Plaintiff, who is represented by counsel in this case and was represented by different counsel in her bankruptcy case, has had over seven months to attempt to obtain ratification, joinder, or substitution of the bankruptcy trustee and has failed to do so.[3] That is sufficient time for her to have sought

---

[3] Plaintiff's counsel learned of the bankruptcy no later than August 1, 2005. Shortly thereafter, Plaintiff's counsel filed a Motion to Stay, requesting that this case be stayed "pending resolution of the forthcoming 11 U.S.C. § 350 petition to re-open the bankruptcy to amend the schedules." Plaintiff's Motion to Stay at ¶ 7. Plaintiff's counsel expressly stated in the Motion to Stay that they would seek to reopen the bankruptcy and get either (1) authorization for the trustee to pursue Plaintiff's claims in this action, or (2) an abandonment by the trustee of the claims so that Plaintiff would become the real party in interest. Although the Motion to Stay was denied, the Court did not enter any sort of order prohibiting Plaintiff from proceeding with her plan to file a motion with the bankruptcy court, and Plaintiff has had the succeeding seven months to file such a motion. Indeed, discovery in this case did not even end until November 1, 2005. No motion to reopen the bankruptcy case has ever been filed.

reopening the bankruptcy case or joinder of the Trustee. There is no indication that she has any present intent to so proceed.

Second, regarding the potential effect on creditors of barring the discrimination claim, in *Wieburg* the district court found that the plaintiff's claims were highly speculative, and dismissal of her case would not alter the creditors' position (*i.e.*, the unpaid, discharged debts would remain unpaid). *Id.* The Court believes that the same is true here. Plaintiff must establish that she was constructively discharged from her position or her damages will be limited strictly to compensatory damages. *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1236 (10th Cir. 2000) ("[A]n award of backpay is not available absent a showing of constructive discharge."). Such a limit on Plaintiff's damages means that any recovery by Plaintiff is not likely to alter the creditor's position, particularly in light of the absence of allegations of mistreatment (other than the disagreement regarding Plaintiff's ability to work) by Defendant during the employment relationship. Thus, Plaintiff must establish a claim for constructive discharge, or dismissal of her claim will likely have no effect on her creditors.

In this case, Plaintiff's constructive discharge claim is highly speculative. "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004). Plaintiff must show that she had no other reasonable choice but to resign--that the conditions were intolerable. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir. 1998). "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Jeffries v. Dep't of Soc. & Rehab. Servs.*, 147 F.3d 1220, 1233 (10th Cir. 1998). Thus,

the bar to establish such a claim is high. *Sanchez*, 164 F.3d at 534.

Here, Plaintiff argues that she was forced to choose between a part-time position and a position with a much lower rate of pay. Complaint at ¶ 39; Docket #77-1, p. 16. Thus, the intolerable condition alleged by Plaintiff concerned the financial detriment of being required to work part time or receive lower pay, and not any workplace circumstances. A financial detriment alone, while it may be an adverse employment action, does not create an objectively intolerable work environment such that Plaintiff has no choice but to resign. *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169 (D. Kan. 2006) (finding that reduction in schedule that resulted in a loss of benefits did not support a claim for constructive discharge). Indeed, the EEOC also found no basis for Plaintiff's claim of constructive discharge. Because Plaintiff cannot establish a claim for constructive discharge, the Court concludes that dismissal of her claims is not likely to alter her creditor's positions.

        2.    <u>Judicial Estoppel</u>

The Tenth Circuit recently adopted the principle of judicial estoppel. *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005). This doctrine prevents a party from assuming a certain position in legal proceedings, benefitting from that position, and, thereafter, changing that position because his interests have changed. *Id.* at 1069. The Tenth Circuit identified three elements of this doctrine: First, "a party's later position must be 'clearly inconsistent' with its earlier position, " *id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)), and the position to be estopped must generally be one of fact rather than of law or legal theory. *Id.* Second, a court must determine "'whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that

either the first or the second court was misled.'"'" *Id.* (citations omitted). Third, the court examines "'whether the party seeking to assert an inconsistent position would derive an unfair advantage . . . if not estopped.'" *Id.* (citation omitted).

Here, as in *Johnson*, the three-part test is satisfied. First, Plaintiff's current factual position -- that she is an aggrieved person to whom substantial damages are due because of discrimination -- is inconsistent with her having declined to list such monetary damages as an asset of her bankruptcy estate.[4] Moreover, she does not even contend that her failure to list the claim was inadvertent. Second, the bankruptcy court accepted her asset schedule and discharged her debts in reliance on her self-identification of her assets. This creates the perception that the first court (the bankruptcy court) was misled. Last, Plaintiff would derive an unfair advantage if not estopped. She was permitted to discharge her debts, deprive her creditors of the amounts due them, and two months later, file this lawsuit while maintaining an annual salary of over $45,000.00 (according to her bankruptcy filings). These facts fall squarely with those in *Barger v. City of Cartersville*, 348 F.3d 1289, 1291 (11th Cir. 2003), in which the Chapter 7 petitioner had a discrimination claim pending at the time of filing the petition; had counsel in the bankruptcy; and had failed to identify the claim as an asset after having every opportunity to do so. Indeed, in *Barger*, the Eleventh Circuit applied judicial estoppel to bar the plaintiff's subsequent employment discrimination damages claims[5] despite evidence that during

---

[4] Plaintiff's Voluntary Petition gave her two opportunities to identify these claims. First she was asked to list "all suits and administrative proceedings to which [she] is or was a party within **one year** immediately preceding the filing of" her bankruptcy case. Voluntary Petition at 2 (emphasis in original). She identified "none." *Id.* Second, she was asked to identify any contingent and unliquidated claims of every nature. *Id.* at Schedule B, Sheet 2 of 2. Again, she identified "none." *Id.*

[5] The Eleventh Circuit did permit plaintiff's claim for injunctive relief (reinstatement) to move forward, an argument not advanced here by the Plaintiff.

the bankruptcy, the plaintiff had informed her counsel and the bankruptcy trustee of the claim and had even moved to reopen the bankruptcy case to include her discrimination claim, facts that are not present in this case. Thus, Plaintiff's claims are now barred by judicial estoppel.

### C. Whether 11 U.S.C. § 522(d)(11)(E) Resurrects a Front Pay Claim

Plaintiff contends that even if she lacks the legal right to assert her discrimination claim generally, her claim for front pay should survive, because of the operation of 11 U.S.C. § 522(d)(11)(E). The Court sees several problems with this. First, in the bankruptcy action Plaintiff never asserted an exemption for future earnings under that statute. In order to preserve such a claim for a prospective lawsuit such as this one, Plaintiff had to have (1) presented it to the Bankruptcy Court and (2) received a ruling that a claim for front pay was, in fact, exempt.[6] *See Petit v. Fessenden*, 80 F.3d 29, 32 n.2 (1st Cir. 1996) (failure to claim an exemption under Section 522(d)(11)(E) on Schedule C barred the exemption). Second, a claim for front pay is contingent upon Plaintiff establishing her claim for constructive discharge, which she has failed to do.

Yet, even if Plaintiff established a claim for constructive discharge, she cannot establish a right to the equitable remedy of front pay. Front pay is to compensate "victims of discrimination for the continuing future effects of discrimination until the victim can be made whole." *Mallinson-Montague*, 224 F.3d at 1237 (citations omitted). Front pay is appropriate "where reinstatement is not available and the victim is making *less money at her current job*." *Id.* (emphasis added) (citing

---

[6] In addition, as of the filing of her bankruptcy petition in February 2004, Plaintiff had been separated from her position with Defendant for eight years. Those eight years were not "future earnings" as of the date of her bankruptcy discharge, June 30, 2004. Indeed, any recovery from Defendant would not constitute "front pay" until the date of a jury verdict in the present case. *Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843, 850 (2001) ("'Front pay is . . . compensation for the post-judgment effects of past discrimination.'") (citation omitted). Any other recovery for wages up to that date would be "back pay."

10

*Carter v. Sedgwick County*, 929 F.2d 1501, 1505 (10th Cir. 1991)). In this case, Plaintiff's current income is significantly higher than her income while she was employed with Defendants.[7] Thus, Plaintiff's claim for front pay must fail.

Finally, 11 U.S.C. § 522(d)(11)(E) provides an exemption for "payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor." Plaintiff makes no attempt to establish the elements of this provision beyond the bare allegation that it applies here, nor does she cite any supporting authority. Therefore, the Court does not find sufficient legal basis for applying the statute under these circumstances.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Filed January 12, 2006; Docket #66] is **granted**. Judgment shall be entered in favor of Defendant due to Plaintiff's lack of a legally protected interest in this action.

Dated at Denver, Colorado this 23rd day of March, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[7] According to her deposition testimony, Plaintiff has been fully employed (working 8-9 hours a day) at Aspen Homes and a predecessor company for over five years. According to her bankruptcy petition, Plaintiff earned $37,415 in 2001 and $48,682 in 2002. At the time of her bankruptcy, she identified her monthly income as $3,787.00, or an annualized amount of $45,444.00. According to Defendant's summary judgment Exhibit A-22, her compensation in her last position with Defendant ranged up to a high of $13.66 per hour, or an annualized amount (assuming approximately 2000 hours) of approximately $27,300. Even assuming generous cost-of-living increases, any front pay claim would be legally barred.